1           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO
2
   Criminal Action No. 12-CR-00010-MSK
3
   UNITED STATES OF AMERICA,
4
       Plaintiff,
5
   vs.
6
   3.  GREGORY A. COLLINS,
7   4.  GEORGE A. GADDY,
   8.  ERIC LUGO,
8   13. COREY L. RILEY,
   14. THOMAS A. SCHRAH, JR.,
9
       Defendants.
10
_____
11
                   **REPORTER'S TRANSCRIPT**
12                  (Hearing on Motions)

13
_____

14          Proceedings before the HONORABLE MARCIA S. KRIEGER,

15  Judge, United States District Court for the District of

16  Colorado, commencing at 4:06 p.m., on the 21st day of May,

17  2012, in Courtroom A901, United States Courthouse, Denver,

18  Colorado.

19

20

21

22

23

24  Proceeding Recorded by Mechanical Stenography, Transcription
       Produced via Computer by Paul Zuckerman, 901 19th Street,
25        Room A259, Denver, Colorado, 80294, (303) 629-9285

1                          **APPEARANCES**

2              GUY TILL, Assistant U.S. Attorney, 1225 17th Street,

3      Suite 700, Denver, Colorado, 80202, appearing for the

4      plaintiff.

5              R. SCOTT REISCH, Attorney at Law, 1490 West 121st

6      Avenue, Suite 202, Denver, Colorado, 80234, appearing for

7      Defendant Collins.

8              JEFFREY EDELMAN, Attorney at Law, 19201 East

9      Mainstreet, Suite 203, Parker, Colorado, 80134, appearing for

10     Defendant Gaddy.

11             DENNIS HARTLEY, Attorney at Law, 1749 East 8th Avenue,

12     Suite 5, Colorado Springs, Colorado, 80906, appearing for

13     Defendant Lugo.

14             HARVEY STEINBERG and ARIEL BENJAMIN, Attorneys at Law,

15     1600 Broadway, Suite 1200, Denver, Colorado, 80202, appearing

16     for Defendant Corey Riley.

17             TIMOTHY EDSTROM, Attorney at Law, 200 South Sheridan

18     Boulevard,  Suite 150, Denver, Colorado, 80226-8006, appearing

19     for Defendant Schrah.

20                       *   *   *   *   *

21                          **PROCEEDINGS**

22        (In open court at 4:06 p.m.)

23             *THE COURT:*  Please be seated.

24             The Court is convened today in Case No. 12-cr-10.

25     This is a multidefendant case, in which this is a motions

1    hearing.

2           As I call the parties' names, would you please enter

3    appearances.

4           For the United States of America.

5           *MR. TILL:*  Your Honor, I'm Guy Till.  I'm an assistant

6    U.S. attorney.  Also present at counsel table is ATF Special

7    Agent Jason Cole.

8           *THE COURT:*  Good afternoon and welcome.  And you're

9    going to need to speak up, Mr. Till.

10          *MR. TILL:*  Your Honor, I have a cold.  I'm talking as

11   loud as I can.  But I'll try to get closer --

12          *THE COURT:*  When we need you to speak, why don't you

13   pick up the microphone and hold it so you don't strain your

14   throat.

15          Okay.  For Gregory A. Collins.

16          *MR. REISCH:*  Good afternoon, your Honor.  My name is

17   Scott Reisch.  Mr. Collins is present by my side to my right.

18          *THE COURT:*  Thank you.

19          For George Gaddy?

20          *MR. EDELMAN:*  Good afternoon, your Honor.  My name is

21   Jeff Edelman.  I appear on his behalf.  And I've learned that

22   he is delayed as a result of traffic, and he may be here.

23   That's -- I've been advised maybe 10 minutes.

24          *THE COURT:*  Do you have authority to proceed in his

25   absence?

1          MR. EDELMAN:  I don't have any authority, no.

2          THE COURT:  After we have entries of appearance, I'll

3     advise you as to whether we're going to proceed with this

4     hearing or not.

5          MR. EDELMAN:  Thank you, your Honor.

6          THE COURT:  Delbert Gardner.

7          MR. TILL:  Your Honor, Mr. Gardner is out of this case

8     at this time.  He was charged in a different case -- excuse

9     me -- and we dismissed on him in this case.

10         THE COURT:  Thank you.

11         Eric Lugo.

12         MR. HARTLEY:  Dennis Hartley for Eric Lugo.  He is

13    present.

14         THE COURT:  Good afternoon and welcome.

15         Corey Riley.

16         MR. STEINBERG:  Good afternoon, Judge.  My name is

17    Harvey Steinberg.  Mr. Benjamin of my firm is also present.

18    We're here with and on behalf of Mr. Riley, who is seated and

19    in custody.

20         THE COURT:  Thank you.

21         Thomas Schra.

22         MR. EDSTROM:  Good afternoon, your Honor.  Tim Edstrom

23    on behalf of Mr. Schra, who is present.

24         THE COURT:  Have I overlooked anybody?

25         Okay.  What's the Government's pleasure with regard to

1    the absence of Mr. Gaddy?

2            *MR. TILL:*  Your Honor, I believe we actually could

3    proceed.

4            *THE COURT:*  On all motions?

5            *MR. TILL:*  Perhaps I guess I didn't think that

6    completely through; so, no, we couldn't.  But it does seem to

7    me there are a couple of motions that are substantive motions

8    that need -- may need an evidentiary hearing.  Perhaps we could

9    set those for evidentiary hearing, and perhaps we could address

10   the balance of the motions on a different day.  I just hate to

11   lose the opportunity to get a date to hear those substantive

12   motions.

13           I think a lot of these other motions, your Honor, we

14   are all in communication.  I've talked to virtually everybody

15   in this case either face to face or on the phone this week.  I

16   mean this is only Monday, I guess, but I actually have; so I

17   guess talked to some face-to-face last week, your Honor.

18           *THE COURT:*  All right.  We have several motions to

19   suppress.  We'll start with those.  We'll leave out Mr. Gaddy's

20   motion to suppress.

21           We have Defendant Riley's motion to suppress fruits of

22   a GPS search.  That's Docket No. 405 [401].

23           Mr. Riley's motion is specific.  It looks like there

24   are two legal issues and perhaps a need for an evidentiary

25   hearing with regard to one issue.

1           Mr. Steinberg?

2           *MR. STEINBERG:*  Yes.

3           *THE COURT:*  All right.  How long do you anticipate, if

4      you've talked with the Government -- how long are you going to

5      need for a hearing?

6           *MR. STEINBERG:*  One hour on that issue.

7           *MR. TILL:*  Your Honor, I think maybe two hours total.

8           *MR. STEINBERG:*  I have this loquacious reputation, but

9      it's just not true.

10          *THE COURT:*  Well, as I look at it, you've got two

11     legal issues and you've got one evidentiary issue; and the

12     evidentiary issue is whether or not the statements were

13     knowingly and voluntarily made.

14          How much evidence, Mr. Till, are you going to present

15     with regard to that?

16          *MR. TILL:*  Your Honor, you're right.  With regard to

17     that, very little.

18          *THE COURT:*  All right.  Then let's see if we can get a

19     suppression hearing set.

20          Ms. Glover, do you have Ms. Aguero available?.

21          *THE COURTROOM DEPUTY:*  I think I may.

22          *THE COURT:*  All right.  We'll need an hour for that.

23          *THE COURTROOM DEPUTY:*  Okay.

24          *THE COURT:*  It looks like that takes care of the

25     setting for 401, 402, and 403.  I assume there will be

1    briefing, or oral argument made at the time of the hearing.

2    What's your preference with regard to that?

3         MR. STEINBERG:  You know, I'm going to leave that to

4    the Court's discretion.  I'm prepared to do either.  It seems

5    to me I'm here to assist the Court.  Whichever you prefer is

6    what I will do.

7         THE COURT:  Mr. Till?

8         MR. TILL:  Oral argument, your Honor.

9         THE COURT:  Okay.  Then maybe we need an hour and a

10   half.

11        It would be helpful if there is any case law you're

12   going to be relying to have the case law that you're relying

13   ahead of time.  And as to the defendant's contention that the

14   warrant application was missing information, it would be

15   helpful to know what information, Mr. Steinberg, you think was

16   missing.

17        Okay.  Let's see if we can go to some other motions.

18        THE COURTROOM DEPUTY:  I have June 12 at 1:00 p.m. for

19   an hour and a half.

20        THE COURT:  All right.  Does that work?

21        MR. STEINBERG:  Judge, unfortunately I'm scheduled for

22   a trial to begin at 8:30 that morning on a sexual assault; but

23   it may well mistry, so --

24        THE COURT:  Or dispo.

25        MR. STEINBERG:  I think it's more likely that it might

1    mistry at this point.

2              THE COURT:  We'll set it for June 12.

3              At what time was it?

4              THE COURTROOM DEPUTY:  1:00 p.m.

5              THE COURT:  1:00 p.m.

6         MR. STEINBERG:  And if I can't be here because of

7    trial, should I file a motion that morning, because it is a

8    case --

9              THE COURT:  You've got Mr. Benjamin.

10        MR. STEINBERG:  I understand, and Mr. Benjamin is

11   great; but Mr. Riley wants Mr. Steinberg.

12             THE COURT:  All right.  Well, then you're going to

13   have to work that out among your clients.

14        MR. STEINBERG:  Even though that case was set first

15   and it was a jury trial sexual assault?

16             THE COURT:  Even though that case was set first.

17        MR. STEINBERG:  May I file a motion to continue that

18   case and indicate when I advised you of the conflict you

19   suggested that I have to accept this setting?

20             THE COURT:  You can move to continue this hearing, if

21   you think there is a justification for it; but I'm not going to

22   entertain a motion on that morning.

23        MR. STEINBERG:  I understand that.  I just don't want

24   to mislead you.  I have a conflict set that day.

25             THE COURT:  Well, you have a hearing that is currently

1    set, you have a trial that's currently set.  And if you get

2    close to that trial and you think the trial is really going to

3    go, you may file a motion to continue this hearing.  But I'm

4    not going to assume that simply because there is a trial that's

5    set it will go.

6              *MR. STEINBERG:*  I concur.  Thanks.

7              *THE COURT:*  Okay.

8              Okay.  Then we'll go to the discovery motions, Docket

9    No. 399, defendant Riley's motion to preserve notes and tapes;

10   Docket No. 252, defendant Lugo's motion for disclosure of

11   confidential informants.  It also appears that there is a

12   motion by defendant Riley for disclosure -- disclosure of

13   confidential informants.  Defendant Schra has filed a motion

14   for disclosure of confidential informants.  Those are at 395

15   and 303 respectively.  Defendant Collins has also filed a

16   motion for disclosure of confidential informants at 282.

17             And I am not dealing with defendant Gaddy's motion for

18   disclosure of confidential informants because he's not here.

19             So let me -- we had a response at 330 and 411.  Is

20   there any further argument you want to make at this point?

21             *MR. TILL:*  No, your Honor.

22             *THE COURT:*  For the defense?

23             I'm not hearing anything.

24             *MR. HARTLEY:*  I have, on behalf of Mr. Lugo, your

25   Honor, on disclosure of confidential informants.

1          THE COURT:  Do you want to make more argument?

2          MR. HARTLEY:  Yes.  It would be very brief.

3          THE COURT:  Please.

4          MR. HARTLEY:  Thanks.

5          Your Honor, this case:  It's practically identical to

6     the facts in *Roviaro*, where they have an eye, ear, nose, and

7     throat witness.  In *Roviaro*, it was in the trunk of the car.

8     In this one, they have some tapes.  The only person that can

9     really testify as to what went on in the car is the

10    confidential informant.  And therefore, under the holding in

11    *Roviaro*, I believe we are entitled to the disclosure of the

12    confidential informant.

13         THE COURT:  Thank you.

14         Anything further?

15         Mr. Edelman, I'm not hearing your motion at this time.

16         MR. EDELMAN:  I understand.  I was moving out of the

17    way for Mr. Hartley.

18         THE COURT:  That's very gracious of you.

19         MR. REISCH:  On behalf of Mr. Collins, we stand on our

20    motion, your Honor.

21         THE COURT:  Thank you.

22         The issue of whether or not identities of confidential

23    informants must be disclosed turns in part upon whether the

24    informant will testify at trial or not.  And those informants

25    who will testify at trial necessarily have to be identified

1    prior to trial.  It's also necessary for the Government to

2    disclose *Giglio* and Jencks material with regard to testifying

3    informants.  Thus, when the Government will call a confidential

4    informant as a testifying witness, the question is not whether

5    the witness' identity will be disclosed but when.

6          Whether an informant's identity will be disclosed is a

7    question that the court faces only when the informant will not

8    testify; and in those circumstances, *Roviaro* applies.  *Roviaro*

9    provides that the Government may withhold non-testifying

10   informants' identity unless a defendant shows that its need for

11   discovery outweighs the Government's interest in preserving the

12   flow of information from the informant.

13         And the Tenth Circuit has stated that disclosure is

14   necessary where the defendant shows that the individual's

15   testimony might be relevant to the defendant's case and justice

16   would be served by the disclosure.  That's the Tenth Circuit

17   opinion of *United States vs. Mendoza Salgado*, at 964 F.2d 993.

18   Such a showing has to be specific.  Mere speculation about the

19   usefulness of the informant's identity or testimony is not

20   sufficient to warrant disclosure.

21         It's not clear to me how many informants are at issue

22   here or whether or not the Government intends to call some of

23   them to testify.  And therefore, I'm not absolutely sure

24   whether we are talking about witnesses who will be testifying

25   or witnesses/informants who will not be testifying.

```
1              I'll set a deadline for the Government to disclose

2      those confidential informants that will be testifying.

3      June 15, 2012.

4              I'll deny the other motions for lack of specificity.

5      They're renewable once you have a list of the informants that

6      will be testifying.

7              Any need for clarification or further explanation?

8              MR. TILL:  No, your Honor.

9              THE COURT:  And for the record, then, Ms. Glover, we

10     should reflect, I believe, that Mr. Edelman's client has joined

11     us; is that right?

12             Mr. Gaddy, are you here?

13             MR. EDELMAN:  Yes, your Honor.

14             THE COURT:  Let me be quite clear, Mr. Gaddy, you may

15     not be late to court again.

16             DEFENDANT GADDY:  Yes, ma'am.

17             THE COURT:  You do so, and you may lose your bond.

18             DEFENDANT GADDY:  Yes, ma'am.

19             MR. STEINBERG:  Judge, may I address the Court in

20     terms of clarification?

21             THE COURT:  Sure.

22             MR. STEINBERG:  In the Government's response, they

23     suggest, You should know who they are.  And that's not fair to

24     us.

25             THE COURT:  No.
```

1    MR. STEINBERG:  And the problem with this is if he

2  says, These are the ones that are going to testify and these

3  are the ones -- I mean if he's not going to give us the names

4  of who is not, how do I know if the confidential informant that

5  I'm concerned with is one of the ones named?  In the sense

6  that --

7    THE COURT:  Mr. Steinberg, that's a question that's a

8  rhetorical question; and it's a rhetorical question because you

9  have the discovery and I don't.

10    MR. STEINBERG:  Correct.

11    THE COURT:  And if you don't think that you can

12  specify that there are other informants that may have provided

13  information to the Government that are not being called, you

14  may renew your motion based on whatever you can point to in the

15  discovery that would suggest the existence of other informants.

16    MR. STEINBERG:  I had one suggestion, if it's

17  appropriate; and that is when the Government does its

18  disclosure, they simply say, Confidential Informant No. 1 will

19  testify regarding this transaction, in the sense that if

20  they're calling the witness, they've identified the witness.

21  If they would simply identify the transaction, then I would be

22  on notice and I wouldn't have this query.

23    THE COURT:  Mr. Till?

24    MR. TILL:  Your Honor, I'm willing to work with all

25  the defense attorneys to make sure they can understand what

1    we're telling them.

2             I'm not sure I understand what exactly the format --

3             *THE COURT:*  I understand what Mr. Steinberg is saying

4    is that you need to disclose the confidential informants who

5    will be testifying and summarize their testimony.

6             *MR. TILL:*  Your Honor, the confidential informants in

7    the discovery -- as the Court says, the Court hasn't seen

8    discovery -- includes a couple hundred reports of

9    investigation.  Confidential informants are referred to by

10   numbers.  So if we say Confidential Informant No. 40 is going

11   to testify, for example, a person could look in the reports of

12   investigation, they can understand who Confidential Informant

13   No. 40 is.

14            *THE COURT:*  I don't think that burden should be on the

15   defense.  That should be the burden on the Government, because

16   it's what you are going to call them to testify to.  You might

17   not call them to testify to every single thing that's in the

18   discovery that relates to them.

19            But if you'd like to use a shorthand and say, "You'll

20   find it at page this, this, this, this, and this, that will

21   probably give the information to the defense.

22            *MR. TILL:*  Okay.  We'll try to do that, your Honor.

23            *THE COURT:*  Okay.

24            *MR. TILL:*  Thank you.

25            *THE COURT:*  Thank you.

1          The -- that will take care of the Motions 252, 282,

2     232, 395, and 303.

3          I think we still have defendant Riley's motion to

4     preserve notes and tapes.  Is there something at issue still

5     there?

6          *MR. STEINBERG:*  No, your Honor.

7          *THE COURT:*  Okay.  Then I can deny that as moot?

8          *MR. STEINBERG:*  Yes.

9          *THE COURT:*  Great.

10          *MR. EDELMAN:*  I'm sorry, your Honor.  Would you mind

11     taking up or including Mr. Gaddy's motion to --

12          *THE COURT:*  I just did.

13          *MR. EDELMAN:*  -- disclose ID?

14          *THE COURT:*  I just did.

15          *MR. EDELMAN:*  Thank you.

16          *THE COURT:*  His motion is 332, and I just referred to

17     it.

18          *MR. EDELMAN:*  I'm sorry.  I missed that.

19          *THE COURT:*  Then we have a group of motions that

20     request disclosure of promises of leniency:  Docket Nos. 251,

21     333, 338, and 302.  These are filed by defendant Lugo, Gaddy,

22     Riley, and Schra.  The Government filed its response at 330,

23     387, and 411.

24          Is there more that needs to be considered with regard

25     to these?  Any argument?

1          MR. TILL:  I have nothing additional, your Honor.

2          MR. HARTLEY:  Nothing on behalf Lugo, your Honor.

3          MR. EDELMAN:  Nothing on behalf of Mr. Gaddy.

4          MR. EDSTROM:  Nothing additional on behalf of

5    Mr. Schra.

6          THE COURT:  Mr. Steinberg?

7          MR. STEINBERG:  We stand on the papers, Judge.

8          THE COURT:  The Government's response to these motions

9    is that they're overbroad.  They request disclosure of any

10   crimes committed by any associate of the defendants who the

11   Government elected not to charge.

12         And I have to agree with the Government that the

13   defense requests are overbroad as phrased.  I understand the

14   primary goal of these motions to be to obtain disclosure of any

15   express promises of immunity or leniency that would apply to

16   persons who are going to testify at trial.

17         Now, I'm assuming the Government has no objection to

18   supplying that information; is that right?

19         MR. TILL:  Your Honor, I believe that is Giglio

20   material.  I agree.

21         THE COURT:  Can you do that by June 15?

22         MR. TILL:  Your Honor, just because of the way things

23   go and the availability of staff, personnel, I'm not sure we

24   can do it by June 15.

25         THE COURT:  When can you do it by?

1          MR. TILL:  I beg your pardon?

2          Your Honor I would request an additional week.

3          THE COURT:  Okay.  So that would take you to June 22.

4          MR. TILL:  Yes, your Honor.

5          THE COURT:  Okay.  We'll set June 22, then, for *Giglio*

6    material to be turned over to the defense.

7          And that results in a granting of motions at 251, 333,

8    398, and 302 in part.

9          Then we have a group of motions for other discovery.

10   We have defendant Collins' motion for Jencks Act materials;

11   defendant Gaddy's motion for disclosure of 404(b), 609, 806,

12   807 evidence; defendant's Riley motion for the same; defendant

13   Riley's motion for *Brady* materials; defendant Riley's motion

14   for notice of experts, and defendant Riley's motion for notice

15   of intention to use various items of evidence.

16         These are typical discovery motions.  I'm not sure

17   whether there are any issues that need to be addressed here.

18   Are there?

19         MR. TILL:  Your Honor, we did respond to each of

20   those, and we took exception to most of it.

21         THE COURT:  So what do you want to have determined?

22         MR. TILL:  I don't really -- I just am advising the

23   Court that I think that it's up to the defense to say at this

24   point.

25         THE COURT:  Okay.  Then let's start with the top

1    motion, 285, defendant Collins' motion for Jencks Act

2    materials.  What's still at issue?

3          MR. REISCH:  Your Honor, what defendant Collins is

4    asking for in this particular motion is that if a witness is

5    going to testify and we have to take some sort of a break for

6    any other statements -- We would ask that they be turned over

7    prior to trial.  And if not, what I'm asking the Court to do is

8    for the Court to notify the jury that -- what statements have

9    been provided to the defense and they need time to look at

10   them, review them, perhaps investigate, and any delay would be

11   attributable to the fact that they were just turned over, after

12   the witness testified, your Honor.

13         THE COURT:  And so how long do you want to have them

14   before trial?

15         MR. REISCH:  Your Honor, I think 30 days would be

16   appropriate, please.

17         THE COURT:  Any objection?

18         MR. TILL:  Your Honor, I request two weeks before

19   trial.

20         THE COURT:  Why two weeks and not 30 days?

21         MR. TILL:  30 days would be June 30; and I think at

22   this point, in order to get everything together sort of step by

23   step by step -- excuse me -- we'll turn them over as we can, as

24   we go; but in order to not set up a deadline that is sort of a

25   Mavrokordatos type of trap where we fail to disclose Jencks

1    material on a timely basis, I prefer to have the deadline be

2    two weeks before trial.  I think trial is set on July 30.  That

3    would be July 13, July 14.

4         THE COURT:  Is two weeks' sufficient time for the

5    defense?

6         MR. REISCH:  Your Honor, I would really prefer 30,

7    because who knows where it would lead.  And I would hate to get

8    them and something come up and have to do further investigation

9    and have to ask for some type of continuance.

10        THE COURT:  All right.  We'll set 30 days before

11   trial.  Presumably when this indictment was filed, and as we've

12   gone through this, the Government has been assembling what it's

13   going to use for purposes of trial.  And that's where we are at

14   this point.  We've got a trial date that's coming up.  And it

15   may be that you aren't going to be ready for trial and you're

16   going to need to move the trial date.  And I can entertain

17   motions with regard to that at some later point in time.  But

18   we need to get the matter ready for trial.  And so I'm going to

19   set 30 days before trial date, which is right now July 30, so

20   that you to the end of June, Mr. Till.

21        MR. TILL:  Your Honor, I don't want to argue with the

22   Court; but I want to advise the Court and the parties that, you

23   know, in *Mavrokordatos*, the issue there was the generation of a

24   report having to do with a witness.  The report was generated

25   after the Jencks deadline.  And the trial court in that case

 1    wanted to suppress the testimony that related to that

 2    statement, which had not even been created at the time of the

 3    deadline.

 4         There could very well be similar type of material in

 5    this case.  And we will disclose it as early as we can because

 6    we will -- we do continue to debrief people, we continue to

 7    prepare people for testimony, and that kind of thing.  We try

 8    to document in most cases the, you know, information we're

 9    getting.  And we would like to turn that over; but I don't want

10    to, by generating that kind statement, prevent that witness

11    from testifying, so.  I'm not -- I just -- that is sort of the

12    dilemma I'm trying to deal with.  And we'll advise the Court

13    and the parties if we get in that situation.

14         THE COURT:  All right.  Thank you.

15         MR. TILL:  Thank you.

16         THE COURT:  We turn to defendant Gaddy's motion for

17    disclosure of 404(b), 609, 806, 807 evidence.

18         What's at issue here?

19         MR. EDELMAN:  Mr. Gaddy has a prior felony, and there

20    may be other bad acts that they -- the Government may want to

21    use.  I don't know of any, but I don't want to be surprised.

22         THE COURT:  Mr. Till?

23         MR. TILL:  Your Honor, I don't think, you know -- We

24    can file a notice with the Court with regard to any prior

25    conviction we intend to impeach him with.  We can do that.

1          There is -- whenever you get into 404(b) evidence --

2     He's charged in a conspiracy, a clubhouse conspiracy basically.

3     And there are probably many, many, many overt acts in

4     furtherance of that conspiracy.  They're not 404(b) evidence;

5     they are overt acts in that conspiracy.

6          So with the understanding of the distinction between

7     *res gestae* and 404(b), I don't -- you know, we can -- I think

8     if we actually see 404(b), we can file a 404(b) notice.

9          THE COURT:  When are you going to give that

10    information to the defense?

11         MR. TILL:  If there is 404(b)?

12         THE COURT:  Yes.

13         MR. TILL:  We would normally do that 30 days before

14    trial, if we have that.

15         THE COURT:  All right.  Then we'll set that 30 days

16    before trial.

17         334 is granted with the disclosure of 30 days before

18    trial.

19         Then we have Docket No. 391 and 392, defendant Riley's

20    motion for the same things.

21         30 days before trial work for you?

22         MR. STEINBERG:  Yes.

23         THE COURT:  Okay.  30 days before trial there.

24         Docket No. 393, defendant Riley's motion for *Brady*

25    materials.

1          What issue do we need to determine here?

2          *MR. STEINBERG:*  I'm assuming the Government is in

3    compliance with their duties under *Brady*.

4          *THE COURT:*  I would think so.

5          *MR. TILL:*  Your Honor, if we had any information of

6    substantive innocence, basically, then, we would give that up

7    immediately.

8          *THE COURT:*  So there is nothing there.

9          *MR. TILL:*  Not that I know of.

10         *THE COURT:*  All right.  Then I grant the motion, there

11   being no opposition.

12         396, defendant Riley's motion for notice of experts.

13   This is essentially a request for a Rule 16 and a 702 deadline.

14         Are there going to be any experts called by the

15   Government?

16         *MR. TILL:*  Your Honor, probably there will be experts

17   called because there is, for example, drug analysis evidence.

18   We did provide the list of expert opinions and their basis and

19   their curriculum vitae and so forth.

20         *THE COURT:*  So you've already provided all of that.

21         *MR. TILL:*  We did.  And I filed something on Friday

22   just indicating, in anticipation of this hearing today, that as

23   of that time, I had not received any, you know -- anything in

24   writing from anybody.

25         I understand Mr. Gaddy has a pending motion for

1    appointment of an expert; but basically, we have disclosed that

2    information.  And I am willing to talk with people about the

3    experts and the issues around all that.

4         In my judgment, the expertise, the science and so

5    forth involved here is the kind that has been established and

6    recognized in the courts for a long time.  And I believe that

7    we can actually take care of the 702 type of issues at the

8    trial --

9         THE COURT:  That's not the Court's current practice.

10        MR. TILL:  Right.

11        THE COURT:  So why would we do that at trial when we

12   have a jury that is here to hear the evidence?

13        MR. TILL:  Well, because, your Honor, I think the jury

14   has a right to hear the defense cross-examine the

15   witnesses -- excuse me -- the witnesses with regard to what

16   they did and how they did it and why they did what they did,

17   and so forth, anyway.

18        I personally -- My understanding of the law in terms

19   of the gatekeeping function, if this were something that was in

20   my judgment truly novel science or truly esoteric, then I could

21   see having a 702 hearing to determine whether the gas

22   chromatograph/mass spectrometry technology, for example, is the

23   kind of procedure that scientists use when they're trying to

24   identify chemical elements.  But I believe in this particular

25   case, at least from talking to the extent it's been discussed,

1    my conversations, I don't really see that as an issue here.

2            I think that -- and I'm not sure why we received

3    nothing in writing from anybody, exactly; but I think that, you

4    know, the chemists -- if we do actually have the chemists come

5    in, they're going to have to say what they did and why they did

6    it.

7            THE COURT:  All right.  Are there any joint 702

8    motions that people have filed?

9            MR. TILL:  No, your Honor.

10           THE COURT:  Then there is nothing to set at this

11   point.  That's how we work it.  We're not going to wait until

12   trial to have a 702 hearing.  So if there is a joint 702 motion

13   that is filed with regard to the expert opinions of any expert,

14   be it defense or be it Government, we're going to have a 702

15   hearing outside the presence of the jury before trial starts.

16           So I don't recall if we had a deadline on the 702

17   motion filing.  Does anybody recall?

18           MR. TILL:  We did, and it was -- I believe it was

19   Friday.

20           THE COURT:  Okay.  And there are no motions; so we

21   don't need to worry about that unless there is something

22   embedded in your motion, Mr. Steinberg.

23           MR. STEINBERG:  What I'm worried about is if I take

24   the Government --

25           THE COURT:  Could you come to the microphone?  It's

1    hard -- It's of a sound sponge in here.

2         MR. STEINBERG:  Sorry.

3         If I take the Government at its word based on their

4    rendition, then they're not going to call any agents who are

5    going to offer opinions in terms of, quote, "what people do

6    involved in drug conspiracies, what people do involved in

7    membership in clubs."

8         All I heard was the Government is say, Hey, these are

9    people that aren't going to be contested.  We're going to call

10   a chemist and we have gas chromatography.  And that's it.

11        I'm assuming the Government is bound by that; and

12   based on that, I don't think there is a need for a 702 motion.

13        MR. TILL:  Your Honor, I don't know how to exactly

14   file a joint motion; but if the Court wants to make a pretrial

15   determination, if no one would join me in it, I will file a

16   motion and ask the Court to make a ruling ahead of time with

17   regard to the gatekeeping kind of thing.

18        THE COURT:  Mr. Till, I have a procedure I use.  Are

19   you familiar with that procedure?

20        MR. TILL:  Your Honor, I've never done a trial like

21   this with you.

22        THE COURT:  It's posted on the website.

23        MR. TILL:  I know, and I've read it.  And I honestly

24   have to tell you I don't think I fully understand it but.  I'm

25   trying to.  Okay.

1          *THE COURT:*  Well, let me see if I can explain it.

2          *MR. TILL:*  All right.

3          *THE COURT:*  You're required under Rule 16 and 702 to

4    tell the defendants what 702 testimony you are going to

5    proffer, what opinions fall under 702.

6          *MR. TILL:*  Right.  I think I've done that.

7          *THE COURT:*  Okay.  I think that answers your question,

8    Mr. Steinberg.

9          *MR. STEINBERG:*  It does.  Thank you.

10         *THE COURT:*  They have the opportunity to call

11   witnesses who will offer 702 opinions as well.  If either you

12   with regard to their opinions or they with regard to your

13   opinions have a question about whether the foundational

14   requirements under 702 are satisfied, you jointly request a 702

15   hearing to determine that, whether foundational underpinnings

16   under 702 are satisfied.

17         *MR. TILL:*  Okay, your Honor.  Well, I guess what I'm

18   telling the Court is -- okay.  I'll try to talk more with the

19   defense and --

20         *THE COURT:*  I think your deadlines have passed, and

21   nobody has asked for any extensions of time; so it sounds like

22   to me the only 702 -- the only 702 opinions that had been

23   proffered will be those for which there has been a timely

24   disclosure.

25         *MR. TILL:*  Your Honor, I do think -- I tried to

1   articulate this.  I don't think I made it clear.  I do think

2   that Mr. Gaddy did essentially ask for an extension of time, so

3   I think there is one extension of time.

4          THE COURT:  Well, Mr. Gaddy has a request at 417 under

5   CJA for the ability to retain an expert.  That has not been

6   ruled on, but that is not something that is right now at issue.

7          He has at Docket No. 423 his request for an extension

8   of time to make his disclosures.  We granted it.  There was no

9   opposition.  So he has an opportunity to make his disclosures

10  later.  That doesn't change your deadline for making

11  disclosures.

12         MR. TILL:  Right.  And I made my disclosures, I

13  believe, on April 20, your Honor.

14         THE COURT:  Okay.

15         MR. TILL:  All right.  Thank you, your Honor.

16         THE COURT:  Great.

17         And I think, Mr. Steinberg, with regard to your motion

18  at Docket No. 397, to the extent you were asking for

19  clarification, you got clarification.

20         MR. STEINBERG:  I agree.

21         THE COURT:  Okay.  So I'll deny that as moot.

22         Then we go to Docket No. 335, defendant Gaddy's motion

23  for disclosure of grand jury information.  The Government

24  responded at Docket 387.  Is there any further argument with

25  regard to that?

1          *MR. EDELMAN:*  None from the defendant, your Honor.

2          *MR. TILL:*  No, your Honor.

3          *THE COURT:*  Thank you.

4          Here this motion requests disclosure of grand jury

5     transcripts.  There is ordinarily a presumption against

6     disclosure of grand jury transcripts.  And the burden is on

7     Mr. Gaddy to make a showing of particularized need for those

8     materials as well as a showing that, quote, "their need for

9     disclosure is greater than the need to continue secrecy and

10    their request is structured to cover only materials so needed."

11    That's a Tenth Circuit 2009 decision, *United States vs. Edge.*

12          Mr. Gaddy's motion does not meet this standard.  His

13    particularized need is identified only in terms of vague

14    generalities stating that he requires the grand jury material,

15    quote, "to provide him with a fair trial, effective assistance

16    of counsel, due process, and an opportunity to effectively

17    confront the witness testimony offered against him," unquote.

18          That disclosure is too conclusory to justify the

19    release of grand jury transcripts.  Therefore the motion is

20    denied.

21          Docket No. 286, defendant Collins' motion for *Bruton*

22    and *James* materials, and Docket No. 394, defendant Riley's

23    motion for *Bruton* and *James* materials.

24          We already set a deadline for the *James* proffer, and

25    that's going to be filed with the Court on June 4, 2012, after

1    an extension of time was granted to prepare that.

2            What's at issue here that we need to deal with today?

3            MR. REISCH:  On behalf of Mr. Collins, I don't believe

4    anything at this point, your Honor.

5            THE COURT:  Okay.

6            MR. STEINBERG:  Nothing that's ripe today.  I think

7    that may change based on the, if you will, disclosure of the

8    document by the Government.

9            THE COURT:  All right.  But I guess what -- the

10   question is we have a procedure that we deal with a *James*

11   proffer, and we deal with it without a hearing.  And so I'm not

12   sure what your motion is requesting that isn't going to

13   ordinarily -- already occur.

14           MR. STEINBERG:  Nothing at this point.

15           THE COURT:  Okay.  Then I'll just grant these two

16   motions consistent with the *James* proffer process that we

17   previously discussed in the deadlines that have been set.

18           Then we have Docket Nos. 377, 378, defendant Collins'

19   motions for a bill of particulars and Docket No. 338, defendant

20   Gaddy's motion for a bill of particulars.

21           Any further argument on that?

22           The Government responded in the same document, Docket

23   No. 387.

24           MR. REISCH:  Your Honor, I'll stand on my motion,

25   unless the Court has a particular question.

1          THE COURT:  I don't.  Thank you.

2          MR. EDELMAN:  Your Honor, I would like to.

3          May I?

4          THE COURT:  Please.

5          But would you speak into the microphone, please.

6          MR. EDELMAN:  Mr. Till and I have a difference of

7    opinion over what constitutes maintaining a drug house.  And

8    I'm at a loss, after reviewing the discovery, what Mr. Gaddy --

9    what his acts were other than going to this clubhouse and

10   smoking pot or marijuana, which he claims a state medical

11   marijuana card, which I understand doesn't excuse him from

12   federal prosecution for possession of marijuana.  That's it.

13   And I'm, I said, at a loss; and I would like to know the

14   specifics of what else the Government has so I'm not surprised.

15         THE COURT:  Thank you.

16         I don't think it's necessary to have further argument

17   by the Government because I'm going to deny both motions.

18         A bill of particulars generally is not warranted -- is

19   not warranted where the indictment sufficiently sets forth the

20   elements of the offenses that are charged such that the

21   defendant is apprised of the charges so as to prepare for

22   trial.  It is not a vehicle by which the defendant is entitled

23   to notice of the evidence that Government intends to use.  It

24   is appropriate only when the Government's theory of the case is

25   unclear.

1        Case law that is instructive with regard to this:

2   *United States vs. Doe* at 572 F.3d 1162, a 2009 Tenth Circuit

3   opinion citing to *United States vs. Tyler*, 42 Fed.Appx. 186, a

4   Tenth Circuit, 2002 decision.

5        Both motions state that they need -- that the

6   defendants need a bill of particulars necessary to inform them,

7   quote, "of the facts and acts they are charged with," unquote.

8   They do not contend that they are unaware of the Government's

9   theory.  They seek greater particularity as to the evidence to

10  be presented.  And therefore, I deny the request.

11       That takes us to the severance motions.  Defendant

12  Collins and defendant Riley both have motions to sever at

13  Docket No. 379 and Docket 400.  Those motions we'll wait to

14  determine at a later date.  I'm not going to determine them

15  today.

16       That leaves us, then, with defendant Gaddy's motion to

17  suppress evidence.  I bypassed that when we started this

18  hearing because Mr. Gaddy wasn't here.

19       I'm going to deny that motion to suppress evidence due

20  to its over-breadth.  There are only conclusory statements made

21  as to why suppression is appropriate.  I'll give Mr. Gaddy a

22  period of seven days from today's date in which to file a

23  specific motion to suppress.

24       There are a few housekeeping motions to deal with.

25  They concern motions that have been made by defendants who have

1  filed notices of disposition, and I will take care of those to

2  extent they haven't been referred to a magistrate judge at the

3  time of the notices -- at the time of the change of plea

4  hearings.

5            Are there any motions that I've overlooked?

6            *MR. EDELMAN:*  Your Honor, correct me if I'm wrong.  I

7  think you may have missed Mr. Gaddy's motion to sever.

8            *THE COURT:*  I just said no motions to sever are going

9  to be determined at this time.

10           *MR. EDELMAN:*  I understand.  But I wanted to just make

11  sure the Court was aware of that motion.

12           *THE COURT:*  What docket number is it?

13           *MR. EDELMAN:*  I think it's 337.

14           *THE COURT:*  I don't think I referred to it.  Thank

15  you.

16           Any other motions?

17           *MR. TILL:*  I don't think so, your Honor.

18           *THE COURT:*  For the defense?

19           All right.  Is there anything else we can do today?

20           *MR. TILL:*  No, thank you, your Honor.

21           *THE COURT:*  Thank you, Mr. Till; thank you to all the

22  defense counsel; thank you to our Marshal's Service and our

23  court staff.

24           Those defendants who are in custody will be remanded

25  to the care and custody of the United States Marshal's Service.

1       Those who are not in custody, please confer with your

2   attorneys as to when you next need to be present.  And please

3   harken to the fact that you have to be present at the time that

4   the hearing starts; otherwise, I'm going to be real strict

5   about revoking bonds.

6       We'll stand in recess.

7    (Recess at 4:49 p.m.)

8                          *   *   *   *   *

9                       **REPORTER'S CERTIFICATE**

10    I certify that the foregoing is a correct transcript from

11  the record of proceedings in the above-entitled matter.  Dated

12  at Denver, Colorado, this 21st day of May, 2012.

13

14                                      *S/Paul A. Zuckerman*
                                        Paul A. Zuckerman
15

16

17

18

19

20

21

22

23

24

25