1     IN THE UNITED STATES DISTRICT COURT
        FOR THE DISTRICT OF COLORADO
2
Criminal Action No. 12-CR-00010-MSK
3
UNITED STATES OF AMERICA,
4
        Plaintiff,
5
vs.
6
THOMAS A. SCHRAH,
7
        Defendant.
8     _____

9                 **REPORTER'S TRANSCRIPT**
                    CHANGE OF PLEA
10    _____

11        Proceedings before the HONORABLE MARCIA S. KRIEGER,

12    Judge, United States District Court for the District of

13    Colorado, commencing at 2:35 p.m., on the 22nd day of August,

14    2012, in Courtroom A901, United States Courthouse, Denver,

15    Colorado.

16                     **APPEARANCES**

17        GUY TILL, Assistant U.S. Attorney, 1225 17th Street,

18    Suite 700, Denver, Colorado, 80202, appearing for the

19    Government.

20        TIMOTHY EDSTROM, Attorney at Law, 200 South Sheridan

21    Boulevard,  Suite 150, Denver, Colorado, 80226-8006, appearing

22    for the Defendant.

23

24              THERESE LINDBLOM, Official Reporter
              901 19th Street, Denver, Colorado 80294
25           Proceedings Reported by Mechanical Stenography
                Transcription Produced via Computer

1        **P R O C E E D I N G S**

2              *THE COURT:*  Court is convened today in Case No.

3    12-cr-10, encaptioned United States of America v. Thomas A.

4    Schrah.  The matter is set down for change of plea.

5              Could I have entries of appearance, please.

6              *MR. TILL:*  Good afternoon, Your Honor.  Your Honor,

7    I'm Guy Till.  I'm an assistant U.S. attorney representing the

8    Government this afternoon.

9              *THE COURT:*  Good afternoon and welcome.

10             *MR. TILL:*  Thank you, Your Honor.

11             *MR. EDSTROM:*  Tim Edstrom on behalf of Thomas Schrah,

12   who is present.  He's the defendant.

13             *THE COURT:*  Good afternoon and welcome.  And I assume

14   that's Mr. Schrah at your left.

15             *MR. EDSTROM:*  He is at my left.  He is present today.

16             *THE COURT:*  Thank you.

17             Are you all ready to proceed?

18             *MR. TILL:*  Yes, Your Honor, we are.

19             *MR. EDSTROM:*  Defendant is ready to proceed.

20             *THE COURT:*  Mr. Edstrom, would you and your client

21   please approach the lectern.

22             This matter is before the Court for a change in the

23   defendant's plea, for rearraign pursuant to Rule 10, and for

24   consideration of and advisement with regard to the parties'

25   plea agreement in accordance with Rule 11, both of the Federal

1    Rules of Criminal Procedure.

2            The record reflects that Mr. Schrah was initially

3    charged in an Indictment filed with this court on January 9,

4    2012.  He was charged in Counts 31 and 32.  A Superseding

5    Indictment was filed with the court at Docket No. 180 on

6    February 6, 2012.  And in that Indictment, he was charged in

7    Counts 31S and 32S.  A Second Superseding Indictment was filed

8    with the court on July 5, 2012, at Docket No. 469.  He was

9    charged in Counts 1 and 2SS, 3SS, 6SS, 7SS, 8SS, 9SS, and 10SS.

10           And I think that's the most recent Indictment that's

11   been filed; is that right?

12           *MR. TILL:*  That's correct, Your Honor.

13           *THE COURT:*  All right.  He's entered a plea of not

14   guilty as to each of these charges.  And I understand that by

15   terms of a written plea agreement, he now desires to change his

16   plea to a plea of guilty to Count 8SS of the Second Superseding

17   indictment, found at Docket No. 469.  And the Government agrees

18   to dismiss all of the counts against him in the First

19   Superseding Indictment, I assume the original Indictment, and

20   then the remaining counts in the Second Superseding Indictment.

21   Is that correct?

22           *MR. TILL:*  Yes, Your Honor, it is.

23           *THE COURT:*  Okay.  Now, this plea agreement

24   anticipates you're going to be filing a written motion to

25   dismiss those.  That's not my usual practice.  Is that what you

1    intend to do?

2              *MR. TILL:*  No, Your Honor.  I'm sorry, that's a

3    mistake.  We're going to make an oral motion today.

4              *THE COURT:*  Okay.  All right.  Then would you please

5    rearraign on Count 8SS of the Second Superseding Indictment.

6              *MR. TILL:*  Yes, Your Honor.

7              *THE COURT:*  Thank you.

8              *MR. TILL:*  Sir, are you the same Thomas A. Schrah,

9    Jr., who is named in Count 8 of the Second Superseding

10   Indictment in this case?

11             *THE DEFENDANT:*  Yes, sir.

12             *MR. TILL:*  Sir, in this Count, which is encaptioned or

13   titled misprision of felony, Title 18 United States Code

14   Section 4, the grand jury alleges that on or about September 1,

15   2010, within the state and district of Colorado, the defendant,

16   Thomas A. Schrah, Jr., then having knowledge of the actual

17   commission of a felony cognizable by a court of the United

18   States, to-wit, cultivation of marijuana, a Schedule I

19   controlled substance, in violation of Title 21 United States

20   Code Section 841(a)(1) and (b)(1)(D), concealed said marijuana

21   cultivation and did not as soon as possible make known the same

22   to a judge and other person in civil and military authority

23   under United States, all in violation of Title 18 United States

24   Code Section 4, misprision of felony.

25             Sir, do you understand that charge?

1          *THE DEFENDANT:*  Yes, sir.

2          *MR. TILL:*  Sir, today, how do you plead to that

3     charge?  Do you plead not guilty, or do you plead guilty?

4          *THE DEFENDANT:*  I plead guilty.

5          *MR. TILL:*  Thank you, sir.

6          *THE COURT:*  Thank you.

7          Mr. Schrah, as of this moment, you're not bound by

8     your plea of guilty.  Indeed, you're not bound by the plea

9     until I accept it.  You can change your mind at any time during

10    this hearing until I accept your plea.  In order to accept your

11    plea, I have to be sure that you understand the charges brought

12    against you, that you understand your choices and the

13    consequences that flow from those choices, I have to be sure

14    that your decision to plead guilty is voluntary and you haven't

15    been pressured into that decision, and ultimately, I have to

16    find that there is a factual basis to support your plea.

17    Throughout this hearing, I want you to let me know if there is

18    anything you don't understand or if you have any questions.  If

19    you would like to consult with your attorney at any time, just

20    let me know, and we'll take a brief recess so you can confer

21    privately.

22          I ask you a number of questions.  They're not intended

23    to trap or embarrass or insult or offend you.  I ask you the

24    questions so that I can evaluate your answers, so I can

25    determine whether I can accept your plea or not.  Therefore,

1   you must answer my questions truthfully and completely.

2   Indeed, just like a witness, you take an oath promising to tell

3   the truth.  And if you don't, your answers can be used against

4   you if an action is brought against you for false statement or

5   perjury.

6           Do you understand?

7           THE DEFENDANT:  Yes, ma'am.

8           THE COURT:  Do you went to proceed?

9           THE DEFENDANT:  Pardon me?

10          THE COURT:  Do you want to proceed?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  Would you please administer the oath.

13          (Defendant sworn.)

14          THE COURT:  Mr. Schrah, how old are you?

15          THE DEFENDANT:  64.

16          THE COURT:  What level of school did you complete?

17          THE DEFENDANT:  I completed high school, and then I

18   had about three or four years of college, but not -- you know,

19   not tied to a specific degree -- well, I have one from

20   University of Iowa, technology, rubber technology, but that --

21          THE COURT:  But you don't have any difficulty reading

22   or writing?

23          THE DEFENDANT:  No, ma'am, no.

24          THE COURT:  Within the last 24 hours, have you taken

25   any medication?

1    *THE DEFENDANT:*  No, ma'am -- well, I took one

2    Adderall, I've been on that for seven years, you know.  But

3    I -- I was on pain medicine, but I quit that three days ago,

4    just to make sure --

5            *THE COURT:*  Okay.  What is Add-all?

6            *THE DEFENDANT:*  Adderall.  I've been taking that since

7    2002, to what they call a close cell brain jury that I got --

8            *THE COURT:*  Adderall; is that right?

9            *THE DEFENDANT:*  Adderall.

10           *THE COURT:*  Does that medication affect your ability

11   to perceive or to think through things?

12           *THE DEFENDANT:*  No, ma'am, I don't.

13           *THE COURT:*  When you were last here, you had recently

14   been injured, and I asked you about your pain level.  Let me

15   ask you again today.  What is your pain level on a scale of 1

16   to 10?

17           *THE DEFENDANT:*  It is fair today.  It's like maybe a

18   4, 3.

19           *THE COURT:*  If it --

20           *THE DEFENDANT:*  If I don't move, it's okay.

21           *THE COURT:*  Well, if it gets too severe or it gets

22   painful enough you can't concentrate, you must tell me.  Do you

23   understand?

24           *THE DEFENDANT:*  Yes, ma'am.

25           *THE COURT:*  Okay.  Now, within the last 24 hours, have

1    you used any drug or alcohol?

2           THE DEFENDANT:  Oh, no.

3           THE COURT:  To the best of your knowledge, have you

4    ever been diagnosed with a form of mental illness?

5           THE DEFENDANT:  No, ma'am.

6           THE COURT:  Is there anything about the way that

7    you're currently feeling physically or emotionally that makes

8    it hard for you to understand what is happening?

9           THE DEFENDANT:  No, ma'am.

10          THE COURT:  Have you read and do you understand the

11   charges against you in the various Indictments?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  Have you discussed those with your

14   attorney?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  Have you asked him all the questions that

17   you had about them?

18          THE DEFENDANT:  Yes, ma'am, I believe I have.

19          THE COURT:  Has he answered all of your questions?

20          THE DEFENDANT:  Yes, he has.

21          THE COURT:  Are there any other questions you want to

22   ask him?

23          THE DEFENDANT:  No, no, I'm --

24          THE COURT:  Let's turn, then, to the plea agreement.

25          Mr. Edstrom, would you please identify it for the

1   record.

2          *MR. EDSTROM:*  The plea agreement is listed as Court's

3   Exhibit No. 1.

4          *THE COURT:*  Thank you.

5          Mr. Schrah, would you please look at Court Exhibit No.

6   1.  Have you read this document?

7          *THE DEFENDANT:*  Yes, ma'am, I have.

8          *THE COURT:*  Have you discussed it with your attorney?

9          *THE DEFENDANT:*  Yes, ma'am.

10          *THE COURT:*  Have you asked him all the questions you

11   had about it?

12          *THE DEFENDANT:*  Yes, ma'am, I believe so.

13          *THE COURT:*  Has he answered all of your questions?

14          *THE DEFENDANT:*  Yes, he has.

15          *THE COURT:*  Are there any other questions you want to

16   ask him about it?

17          *THE DEFENDANT:*  No, I -- I don't have any questions,

18   Your Honor.

19          *THE COURT:*  Now, this document has a lot of legal

20   language in it.  Do you understand what it says and what it

21   means?

22          *THE DEFENDANT:*  Yes, ma'am, I do.

23          *THE COURT:*  Does it reflect all of your agreement with

24   the Government?

25          *THE DEFENDANT:*  Yes, it does.

1          *THE COURT:*  Did you sign it?

2          *THE DEFENDANT:*  Yes, ma'am, I did.

3          *THE COURT:*  Would you look at the last page, please.

4    Is your signature on that page?

5          *THE DEFENDANT:*  I'm sorry, what?

6          *THE COURT:*  Is your signature on that page?

7          *THE DEFENDANT:*  Yes, ma'am, it is.

8          *THE COURT:*  Would you also turn to page 2 and focus on

9    paragraph C.

10         *THE DEFENDANT:*  Yes, ma'am.

11         *THE COURT:*  Do you see that --

12         *THE DEFENDANT:*  Yes, ma'am.

13         *THE COURT:*  -- paragraph?

14         *THE DEFENDANT:*  Yes, ma'am.

15         *THE COURT:*  In this paragraph, you are giving up

16   certain rights that you have with regard to appeal and with

17   regard to a collateral attack.  You're agreeing that you will

18   have no right to appeal the sentence that is imposed here

19   except under very limited circumstances.  Those circumstances

20   are limited to a situation where the sentence imposed exceeds

21   the maximum statutory penalty or where sentence is the result

22   of an upward departure or variance beyond the sentencing

23   guideline range, or where the adjusted offense level is

24   determined to be greater than 8.

25              Now, with regard to your right to collaterally attack

1    the sentence or judgment in this case, you're also giving that

2    up except under very limited circumstances.  You'll only be

3    able to initiate a collateral attack if there is an explicitly

4    retroactive change in the applicable guideline or sentencing

5    statute or where you claim that you were denied effective

6    assistance of counsel or where you claim you were the victim of

7    prosecutorial misconduct.

8           Now, these waivers don't apply if the Government

9    appeals from the sentence that is imposed.  Do you understand

10   this?

11          THE DEFENDANT:  Yes, ma'am, I do.

12          THE COURT:  Mr. Edstrom, did you sign the plea

13   agreement?

14          MR. EDSTROM:  I did.

15          THE COURT:  Did you review it with your client?

16          MR. EDSTROM:  I did.

17          THE COURT:  Did you answer all of Mr. Schrah's

18   questions?

19          MR. EDSTROM:  I did.

20          THE COURT:  Are you satisfied that he understands the

21   terms and provisions of the plea agreement?

22          MR. EDSTROM:  I'm fully satisfied that he understands

23   the terms of the plea agreement.

24          THE COURT:  Did you review the discovery in this case?

25          MR. EDSTROM:  I have reviewed the discovery.

1        THE COURT:  Does it comport with the facts that are

2   set out in the plea agreement?

3        MR. EDSTROM:  It does.

4        THE COURT:  Thank you.

5        Mr. Till, does Exhibit 1 also bear your signature?

6        MR. TILL:  It does, Your Honor.

7        THE COURT:  Thank you.

8        Mr. Schrah, in Exhibit 1, there is a statement of what

9   the Government believes it could prove if this matter were to

10  go to trial.  By entering into the plea agreement, you're

11  admitting these facts.  I'll treat them as true for purposes of

12  considering your plea and for purposes of sentencing.

13  Therefore, I'm going to ask Mr. Till, as the Government's

14  attorney, to recite the facts you've agreed to.  You should

15  listen closely to what he says, because when he finishes, I'm

16  going to ask if these facts are true.  You must tell me if you

17  have any disagreement with the facts as recited by Mr. Till.

18        Do you understand?

19        THE DEFENDANT:  Yes, ma'am, I do.

20        THE COURT:  Mr. Till, would you please recite the

21  facts upon which the parties agree.

22        MR. TILL:  Yes, Your Honor.

23        Your Honor, between August 1, 2010 and March 31, 2011,

24  Sheps Khamsahu and other persons cultivated marijuana plants

25  using grow lights and other equipment on the premises at 5421

1  East 52nd Avenue, Commerce City, within the district of

2  Colorado.  The defendant was aware of the marijuana grow

3  operation.  The defendant concealed the marijuana grow

4  operation.  The defendant did not report the existence of the

5  marijuana grow operation, the activities of Sheps Khamsahu and

6  other persons tending the marijuana grow operations to any

7  person in authority or in law enforcement.  The marijuana

8  plants grew to maturity twice during the period.  Each grow

9  cycle resulted in two harvests.  There were at least

10  2.5 kilograms or less than 5 kilograms of harvested marijuana.

11          Your Honor, those are the facts.

12          THE COURT:  Mr. Schrah, are these facts true?

13          THE DEFENDANT:  Yes, ma'am.  I'm not sure of the size

14  thing, but I accept that, because I don't -- you know, I

15  wasn't -- you know, I rented the space.  I don't know about the

16  sizes, but I would assume that that is true.  I would accept

17  that.

18          MR. TILL:  Your Honor, I could advise Mr. Schrah and

19  his attorney and the Court that we did debrief Sheps Khamsahu

20  at some length to come up with the harvested quantities, so

21  that's the source.  That was disclosed in discovery, so that's

22  the source of that information, Your Honor.

23          THE COURT:  I'm not concerned with what the source of

24  the information is, but I am concerned with regard to whether

25  or not Mr. Schrah admits that fact.  If he's going to dispute

1    that fact, it needs to be noted for the record.  If he admits

2    that that is true, then I'll treat it as true for all purposes.

3              So, Mr. Schrah, what's your position?

4              THE DEFENDANT:  Well, I guess I would accept that.  I

5    know the two crops thing is correct, so I would assume that the

6    other is correct.  I would accept that, yes, ma'am.

7              THE COURT:  All right.  Now, please understand, it's

8    not a question of accepting it.  You're stating that these

9    facts are true, and that means you're going to be held

10   accountable for these facts.  Are they true?

11             THE DEFENDANT:  Yeah, I guess so.  Yes, ma'am.

12             THE COURT:  Mr. Edstrom, would you like to confer with

13   your client?

14             MR. EDSTROM:  Absolutely.

15             THE DEFENDANT:  Yes, ma'am.

16             MR. EDSTROM:  I think I need all of 20 seconds.

17             THE COURT:  Fine.

18             (Off-the-record discussion between counsel and

19   defendant.)

20             MR. EDSTROM:  I have had a chance.

21             THE DEFENDANT:  Thank you, ma'am.

22             THE COURT:  Are these facts all true?

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  Thank you.

25             Then let's talk about penalty here.  The statutory

1    penalty for misprision of a felony is no more than 3 years of

2    imprisonment, there can be a fine of up to $250,000, both can

3    be imposed, there can be a term of supervised release of up to

4    1 year following imprisonment, and there is a mandatory special

5    assessment fee of $100.

6           Now, on page 4 of the plea agreement, in paragraph A,

7    under statutory penalties, it refers to this charge as being a

8    charge in an Information.  But in fact, this is the charge, I

9    understand, that is in the Second Superseding Indictment.  Is

10   that correct?

11          MR. TILL:  That is correct, Your Honor.

12          MR. EDSTROM:  Your Honor, I don't know if your copy

13   reflects that.  I had sent over a new copy that does state the

14   Second Superseding Indictment.

15          THE COURT:  Okay.  That's what you're working from?

16          MR. EDSTROM:  That's what I'm working from.

17          THE COURT:  Okay.  Thank you.

18          Now, in the federal system, we measure prison terms in

19   terms of months, not in terms of years.

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  And there is no automatic reduction, there

22   is no parole.  I know that the sentence that you have

23   calculated here in the plea agreement assumes probation, but

24   that's not binding; and, therefore, I need to explain to you

25   exactly what happens with a prison term as well.

1          *THE DEFENDANT:*  Yes, ma'am.

2          *THE COURT:*  If a prison term is imposed, it will be

3     measured by months.  And there are limited number of ways to

4     reduce a prison term.  You can do so on a motion -- in a motion

5     that is filed shortly after judgment is entered.  You can do so

6     if you initiate a successful appeal; but, remember, you've

7     given up your right to appeal, except under very limited

8     circumstances.  You can do so if there is a successful

9     collateral attack; but, remember, you've given up your right to

10    a collateral attack except under specified circumstances.  And

11    you have the ability to be the beneficiary of the discretion of

12    the Bureau of Prisons.  They have authority to give credit

13    against a sentence of up to 54 days per year for good time.

14    And that's a determination they make on an annual basis, based

15    upon whether they believe you followed their rules and

16    regulations.

17          Now, if there is a prison term imposed, it can be

18    followed by a term of supervised release.  And if a

19    probationary term is imposed, then there likely will not be a

20    supervised release term.  But supervised release and probation

21    both can be made subject to your compliance with certain

22    conditions.  And these conditions fall into two categories,

23    standard and special, and there are lots of them.

24          Now, the way supervised release and probation are

25    similar is, they anticipate and are conditioned upon your

1    compliance with all of the conditions all of the time.  It's

2    not good enough to try.  It's not good enough to follow some of

3    the conditions but not others of the conditions.

4              *THE DEFENDANT:*  Yes.

5              *THE COURT:*  The standard conditions are quite

6    numerous.  I'm only going to mention three of them, but you

7    should understand there are many more.  You cannot commit any

8    new crimes, state, federal or local; you cannot use, sell, or

9    possess any illegal substances; you cannot use, sell, or

10   possess any prohibited firearms.  And as I said, there are a

11   bunch of other standard conditions.

12             Then there are special conditions.  And special

13   conditions are unique to you and your particular circumstances.

14   They may require periodic drug checks, they may require

15   participation in various rehabilitation programs, they may

16   require you to get medical treatment or mental health treatment

17   if that were appropriate.

18             Now, what is important about all of these conditions

19   is that they're mandatory.  And whether supervised release is

20   imposed or probation is imposed, if you don't adhere to all of

21   these conditions all of the time, the Government can bring you

22   back to court and in the case of supervised release, seek

23   revocation of supervised release and have you sent back to jail

24   for more time.

25             *THE DEFENDANT:*  Yes, ma'am.

1          *THE COURT:*  In the case of probation, revocation of

2     probation.  And if probation were revoked, then you would be

3     sentenced to serve a prison term.

4          Now, the penalty that will be imposed is not just a

5     function of the statute of conviction, it is the result of the

6     interplay of other statutes as well.  And the most important of

7     these is 18 U.S.C. Section 3553(a), which governs sentencing in

8     all federal criminal cases.  It requires the Court to impose a

9     sentence that is sufficient but not greater than necessary to

10    promote respect for the law; provide just punishment;

11    adequately deter criminal conduct; protect the public from

12    further crimes by the defendant; and provide the defendant with

13    needed educational or vocational training, medical care, or

14    other correctional treatment in the most effective manner.

15         And in order to fashion a sentence that meets these

16    objectives, the statute tells me that I should consider

17    particular factors:  The nature and circumstances of the

18    offense; your history and characteristics; the kinds of

19    sentences that are available; what the federal sentencing

20    guidelines would require; the need to avoid unwarranted

21    sentence disparities among defendants with similar records

22    found guilty of similar conduct; and in the appropriate case,

23    the need for restitution.

24         Now, I know your attorney and the Government's

25    attorney have estimated the range that they believe will apply

1   under the federal sentencing guidelines.  You'll find these

2   computations beginning on page 6 of Exhibit 1.  But there are

3   several things you need to know about these computations.

4   First of all, they're not binding in this case.  There is no

5   guaranteed sentence here.

6          *THE DEFENDANT:*  Yes, ma'am.

7          *THE COURT:*  Secondly, this is an estimate based on the

8   information that the attorneys had at the time you entered into

9   this plea agreement.  But at the time of sentencing, we're not

10  going to be working from this document.  We won't be working

11  necessarily from these calculations.  We're going to be working

12  from a presentence investigation report.  And that report is

13  prepared by a probation officer of the court.  It contains

14  calculations under the guidelines.  And those calculations

15  sometimes are the same as what is in a plea agreement, but

16  sometimes they're not.  You and your attorney will meet with

17  the probation officer before the report is prepared, and you'll

18  get a chance to see the report once it is prepared.  And you'll

19  have an opportunity if you think there is an error or mistake

20  in the report to tell the probation officer.  And if the

21  probation officer doesn't adequately address your concern, then

22  to raise that concern at the time of sentencing.

23          And, finally, you should understand that the

24  calculation under the guidelines is only one factor that I

25  consider in determining your sentence.  Remember that list of

1    factors that I recited?  It's only one of them.

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  It's a starting point, but it's not

4    necessarily the ending point.  And that's because the sentence

5    that is imposed has to satisfy the sentencing objectives.  And

6    if the calculation under the guidelines doesn't do that, then I

7    can impose a non-guideline sentence, a sentence that falls

8    outside the guideline range.  Sometimes the parties call that a

9    variant sentence or a statutory sentence; but, really, what it

10   is, is simply a sentence outside the guideline range.  And a

11   sentence outside the guideline range could be lower than the

12   guideline range, or it could be higher than the guideline

13   range, whatever is necessary in the particular circumstances.

14             Now, your sentencing hearing will occur a number of

15   weeks from now.  And before that hearing, as I said, you'll

16   meet with the probation officer, and you'll have an opportunity

17   to look at the presentence report.  At the sentencing hearing,

18   the attorneys will argue about what sentence they think is

19   appropriate here.  You'll have an opportunity to make a

20   statement, but no one else may make a statement on your behalf.

21   If there are other people who would like to say something about

22   the factors to be considered for sentencing, they may write a

23   letter, not to me, but to the probation officer so that the

24   letter is included with the presentence investigation report.

25             Do you understand the objectives and factors I'll be

1    evaluating in determining your sentence?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  Do you understand the maximum sentence

4    that can be imposed?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  Do you understand that the charge you're

7    pleading guilty to is a felony?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  And do you understand that that could

10   affect your civil rights, including your right to vote and hold

11   public office, serve on a jury, or lawfully possess a firearm?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  Do you understand that the sentence that

14   is imposed may be more severe than the calculations in Exhibit

15   1?

16             THE DEFENDANT:  Yes, ma'am.

17             THE COURT:  Do you understand if I accept your plea

18   today, then no matter what the sentence is, you won't be able

19   to withdraw it at the time of sentencing?

20             THE DEFENDANT:  I understand, ma'am.

21             THE COURT:  Do you have any questions about

22   sentencing?

23             THE DEFENDANT:  Pardon, Your Honor?

24             THE COURT:  Do you have any questions about

25   sentencing?

1          *THE DEFENDANT:*  No, ma'am, no.

2          *THE COURT:*  Then let's go to your statement in

3     advance.  That's docket -- that's I think been marked as an

4     exhibit.  Mr. Edstrom, could you identify it.

5          *MR. EDSTROM:*  I can.  The Statement by Defendant in

6     Advance of Plea of Guilty is marked as Court's Exhibit No. 2.

7          *THE COURT:*  Thank you.

8          Mr. Schrah, please look at Exhibit 2.  Have you seen

9     that document before?

10          *THE DEFENDANT:*  I'm sorry, do I see what?

11          *THE COURT:*  Have you seen Exhibit 2 before?

12          *THE DEFENDANT:*  Yes, ma'am, I have.

13          *THE COURT:*  Have you read it?

14          *THE DEFENDANT:*  Yes, Your Honor.

15          *THE COURT:*  Have you discussed it with your attorney?

16          *THE DEFENDANT:*  Yes, ma'am.

17          *THE COURT:*  Have you asked him all the questions you

18     had about it?

19          *THE DEFENDANT:*  I believe I have, yes, Your Honor.

20          *THE COURT:*  Are there any other questions you want to

21     ask him about it?

22          *THE DEFENDANT:*  No, no, ma'am.

23          *THE COURT:*  Well, let's go -- let's verify that you

24     signed it.  Would you look at the last page.  Is that your

25     signature?

1          *THE DEFENDANT:*  Yes, ma'am, that's my signature.

2          *THE COURT:*  Let's review the constitutional rights

3     you're giving up today by making your plea of guilty.

4          *THE DEFENDANT:*  Yes, Your Honor.

5          *THE COURT:*  Now, under the United States Constitution,

6     you have a number of rights and protections; and you're giving

7     up some of these by making your plea of guilty today.  First

8     and foremost, the Constitution guarantees to you that when a

9     charge such as this is brought against you, you have a right to

10    have it determined by a jury in a jury trial.  Now, ordinarily,

11    a jury trial would take place in this courtroom, and the jury

12    would sit to my left in the jury box.  Twelve people would be

13    selected to serve on the jury, and you and your attorney and

14    the Government's attorney would participate in the selection of

15    those people.  You and the Government could excuse any

16    potential juror who could not be fair and impartial or who was

17    unwilling or unable to apply the law.  In addition, you could

18    excuse up to ten people, and the Government could excuse up to

19    six people without giving any reason whatsoever.

20          Once the jurors are selected, they all take a solemn

21    oath promising to tell the truth -- that's a different oath.

22    Promising to consider only the evidence presented here in the

23    courtroom and to follow the instructions that they are given as

24    to the law.  One of the instructions that I give them tells

25    them that they have to reach a unanimous decision based on what

1   they see and hear in order to find you guilty.  If any one of

2   them has a reasonable doubt as to your guilt, you cannot be

3   convicted.

4           Now, during the trial process, you have a number of

5   other constitutional rights.  For example, you have the right

6   to remain silent.  That means, no one can force you to testify,

7   no one can force you to answer questions or to say anything.

8   But it also means that the jury can't consider the fact that

9   you choose not to say anything in determining whether the

10  Government has proven the charge against you.

11          Now, in addition, although you remain silent, your

12  attorney does not need to remain silent.  Your attorney can

13  cross-examine witnesses, can oppose the admission of exhibits

14  or other evidence, can make arguments to the Court and also

15  arguments to the jury.  You also can change your mind with

16  regard to this right.  You can decide to testify if you want

17  to, either before the trial or during the trial.  You can put

18  on evidence and call witnesses.  In fact, if there are

19  witnesses that you want to call to testify on your behalf and

20  they're reluctant to do so, I would compel them to do so.

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  You have yet another constitutional right

23  during the trial process, and that's the right to be

24  represented by an attorney.  And where you cannot afford an

25  attorney to represent you, to have one appointed to represent

1    you without any cost to you.  Mr. Edstrom has represented you

2    in this case, as has another attorney in the law firm that he's

3    associated with.  I can assure you that if you would prefer not

4    to proceed with this plea agreement, that they would represent

5    you at trial.  And if you could not afford to go to trial

6    because you could not afford their services, you would be

7    appointed counsel to represent you at trial without any cost to

8    you.

9           THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  Now, if you went to trial and you were

11   convicted, you could appeal from your conviction and also from

12   your sentence.  But by entering your plea of guilty today, you

13   won't be able to appeal from your conviction.

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  And for the most part, you won't be able

16   to appeal from your sentence.

17          THE DEFENDANT:  Yes, ma'am, I understand.

18          THE COURT:  Do you understand that you're giving up

19   your right to a jury trial and other constitutional rights

20   associated with it if you proceed with your plea of guilty

21   today?

22          THE DEFENDANT:  I do, Your Honor.

23          THE COURT:  Is that what you want to do?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  Has anybody -- and when I say "anybody," I

1   really do mean anybody, family, friends, neighbors, strangers,

2   associates, people you like, people you don't like, people here

3   at the courthouse, other people, including the attorneys or the

4   court staff or anybody, has anybody pressured you to make this

5   plea today?

6           THE DEFENDANT:  No, Your Honor.  No, they haven't.

7           THE COURT:  Has anybody promised you something that

8   isn't in the plea agreement?

9           THE DEFENDANT:  No, ma'am.

10          THE COURT:  Have you had enough time to review and

11  consider and discuss your plea and the plea agreement with your

12  attorney?

13          THE DEFENDANT:  Yes, Your Honor, I have.

14          THE COURT:  Are you satisfied with the legal

15  representation you've received?

16          THE DEFENDANT:  Yes, I am, Your Honor.

17          THE COURT:  You don't have any concerns, complaints,

18  or criticism?

19          THE DEFENDANT:  No, ma'am, no.

20          THE COURT:  Do you want to ask your attorney any

21  questions?

22          THE DEFENDANT:  No, ma'am.

23          THE COURT:  Do you have any questions for me?

24          THE DEFENDANT:  No, I -- I understand.  I mean, you

25  know -- I understand the charges and the consequences.

1          THE COURT:  Well, then, now is the time to finalize

2     your decision.  This plea agreement, the one you and I have

3     been discussing, Exhibit 1, do you still want to proceed with

4     it?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  You still want to plead guilty to Count

7     8SS of the Second Superseding Indictment, found at Docket No.

8     469?

9          THE DEFENDANT:  Yes.  Yes.

10          THE COURT:  Thank you.

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Mr. Edstrom, any reason not to accept the

13     plea and plea agreement?

14          MR. EDSTROM:  There is no reason not to accept it.

15          THE COURT:  Mr. Till.

16          MR. TILL:  There is no reason not to accept it, Your

17     Honor.

18          THE COURT:  Do either of you desire to supplement the

19     record?

20          MR. TILL:  The Government does not, Your Honor.

21          MR. EDSTROM:  I have nothing further to supplement.

22          THE COURT:  Thank you.

23          Mr. Till, the plea agreement is premised upon a

24     dismissal of the remaining charges in the Second Superseding

25     Indictment, Docket No. 469, the original Indictment, Docket No.

1   1, and the First Superseding Indictment at Docket No. 180.  A

2   number of these charges are much more serious than this.  Does

3   the charge that Mr. Schrah is pleading guilty to reflect the

4   seriousness of the actual offense behavior?

5           MR. TILL:  Yes, Your Honor, it does.

6           THE COURT:  If the Court were to accept this plea,

7   would the statutory purposes of sentencing be undermined in any

8   fashion?

9           MR. TILL:  No, Your Honor, they would not.

10          THE COURT:  Thank you.

11          Then based upon the record made in open court today in

12  Case No. 12-cr-10, encaptioned the United States of America v.

13  Thomas A. Schrah, Jr., I hereby find that the defendant is

14  fully competent to enter an informed plea; he's been

15  represented through the course of this case and this

16  proceeding, and he has no objection, criticism, or complaint as

17  to the representation he's received; he's aware of the nature

18  of the charges against him and the effects and consequences of

19  his plea of guilty; he has knowingly and voluntarily waived

20  fundamental constitutional rights, including his right to a

21  jury trial; he understands that the penalty to be imposed by

22  the Court will be based in part on the statements in the plea

23  agreement and that the penalty may exceed the calculations in

24  the plea agreement.  His plea of guilty is voluntarily and

25  knowingly made, and the charge and plea is supported by an

 1   independent basis in fact.

 2           I understand the Government to orally move to dismiss

 3   the remaining charges; is that correct?

 4           MR. TILL:  Your Honor, I'd like to do that now if I

 5   may.

 6           THE COURT:  Please.

 7           MR. TILL:  Your Honor, the Government asks the Court

 8   to please dismiss, pursuant to the plea agreement, with regard

 9   to the Second Superseding Indictment, Count 1, 2, 3, 6, 7, 9,

10   and 10 as to Mr. Schrah, and also to dismiss the First

11   Superseding Indictment and the initial Indictment as to

12   Mr. Schrah.

13           THE COURT:  I assume there is no objection.

14           MR. EDSTROM:  No objection.

15           THE COURT:  Thank you.  Then based upon the

16   representation of the Government, I find that good cause exists

17   to grant the Government's motion to dismiss the remaining

18   charges in the Second Superseding Indictment, all the charges

19   against Mr. Schrah in the First Superseding Indictment, and all

20   of the charges in the initial Indictment.  It's therefore

21   ordered that Court Exhibits 1 and 2 are received.  The plea as

22   made in open court today is accepted, and the defendant is

23   adjudged guilty as charged in Count 8SS of the Second

24   Superseding Indictment found at Docket No. 469.

25           The Government's motion to dismiss the other charges

1    in the Second Superseding Indictment, Counts 1, 2, 3, 6, 7, 9

2    and 10, and all the charges in the initial Indictment and First

3    Superseding Indictment is granted, but the effect of this order

4    is stayed until the time of sentencing.

5          The Probation Department will conduct a presentence

6    investigation and submit a presentence report as required by

7    Rule 32.  And the defendant with assistance of counsel will

8    participate in the investigation and cooperate fully with the

9    Probation Department.

10         It looks like to me you have set a sentencing hearing

11   for November 20, 2012 at 11:00 a.m.; is that right?

12         *MR. TILL:*  That's correct, Your Honor.

13         *MR. EDSTROM:*  That is correct.

14         *THE COURT:*  Does that still work?

15         *MR. TILL:*  It works for the Government, Your Honor.

16         *MR. EDSTROM:*  It works on behalf of defendant as well.

17         *THE COURT:*  Okay.  That will be our sentencing

18   hearing.  Trial on the charges against Mr. Schrah was vacated

19   at the time of the filing of notice of disposition.  With

20   regard to motions, there are some outstanding motions.  I note

21   Docket No. 564 -- actually, just one, it looks like -- 564, a

22   motion for leave to restrict a document filed by the United

23   States as to a number of defendants, including Mr. Schrah.

24         *MR. TILL:*  Your Honor, I believe that concerned a

25   witness.  And actually, I think that is moot at this point.

1          THE COURT:  Okay.  The Court will deny it as moot.

2          Any other motions that you're aware of that I've

3    overlooked?

4          MR. TILL:  No, Your Honor.

5          With regard to bond –– if it's time to address bond.

6          THE COURT:  You can.

7          MR. TILL:  I would request the Court to continue

8    Mr. Schrah on bond pending his sentence.

9          THE COURT:  All right.

10         MR. EDSTROM:  We would agree with that.

11         THE COURT:  Okay.  Anything else?

12         MR. TILL:  No, Your Honor.

13         THE COURT:  Anything else?

14         MR. EDSTROM:  Nothing on behalf of Mr. Schrah.

15         THE COURT:  Thank you.  Then the bond conditions will

16   continue pending sentencing.

17         That will conclude this matter.  Thank you, Mr. Till;

18   thank you, Mr. Edstrom; thank you to our Marshal Service and

19   our court staff.

20         Mr. Schrah, please be sure and check with your

21   attorney to confirm date and time for the sentencing hearing.

22   You have to be here.  If you aren't, the Government could

23   request the issuance of a warrant for your arrest.

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  I'll look forward to seeing you then.

 1 | We'll stand in recess.

 2 |          *THE DEFENDANT:*  Thank you.

 3 |          (Recess at 3:16 p.m.)

 4 |                    REPORTER'S CERTIFICATE

 5 |

 6 |      I certify that the foregoing is a correct transcript from
the record of proceedings in the above-entitled matter.

 7 |

 8 |      Dated at Denver, Colorado, this 22nd day of August, 2013.

 9 |                              s/Therese Lindblom

10 |                    _____

11 |                    Therese Lindblom,CSR,RMR,CRR