```
                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLORADO

Criminal Action No. 12-CR-00010-MSK

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

THOMAS A. SCHRAH,

     Defendant.
_____
```

**REPORTER'S TRANSCRIPT**
SENTENCING
_____

Proceedings before the HONORABLE MARCIA S. KRIEGER, Judge, United States District Court for the District of Colorado, commencing at 11:22 a.m., on the 30th day of November, 2012, in Courtroom A901, United States Courthouse, Denver, Colorado.

**APPEARANCES**

GUY TILL, Assistant U.S. Attorney, 1225 17th Street, Suite 700, Denver, Colorado, 80202, appearing for the Government.

TIMOTHY EDSTROM, Attorney at Law, 200 South Sheridan Boulevard, Suite 150, Denver, Colorado, 80226-8006, appearing for the Defendant.

```
              THERESE LINDBLOM, Official Reporter
              901 19th Street, Denver, Colorado 80294
           Proceedings Reported by Mechanical Stenography
                 Transcription Produced via Computer
```

|   |   |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | *THE COURT:* Court is convened today in Case No. |
| 3 | 12-cr-10, which is encaptioned for today's hearing, a |
| 4 | sentencing hearing, as the United States of America v. Thomas |
| 5 | A. Schrah. |
| 6 | Could I have entries of appearance, please. |
| 7 | *MR. TILL:* Good morning, Your Honor. Your Honor, I'm |
| 8 | Guy Till. I'm an assistant U.S. Attorney representing the |
| 9 | Government, Your Honor. |
| 10 | *THE COURT:* Good afternoon and welcome -- good morning |
| 11 | and welcome. |
| 12 | *MR. TILL:* Thank you, Your Honor. |
| 13 | *MR. EDSTROM:* Good morning, Your Honor. Tim Edstrom |
| 14 | on behalf of Defendant Thomas Schrah, who is present at defense |
| 15 | counsel's table. |
| 16 | *THE COURT:* Good morning and welcome to you as well. |
| 17 | *THE DEFENDANT:* Good morning. |
| 18 | *THE COURT:* I am assuming that Mr. Schrah is seated to |
| 19 | your left. |
| 20 | *MR. EDSTROM:* He is seated to my left. |
| 21 | *THE COURT:* Thank you. Would you and Mr. Schrah |
| 22 | please approach the lectern. |
| 23 | This matter is before the Court for purposes of |
| 24 | sentencing. The record reflects that the defendant was charged |
| 25 | in a 32-count Indictment filed with this court on January 9, |

1   2012.  He was charged in Count 31 with conspiracy to use and
2   maintain a drug-involved premises in violation of 21 U.S.C.
3   Sections 846, 856(a) and (2) and (b), and in Count 32 with
4   using and maintaining a drug-involved premises and
5   intentionally aiding and abetting same in violation of 21
6   U.S.C. Section 856(a)(1), (2), and (b), and 18 U.S.C. Section
7   2.  This Indictment also included a forfeiture allegation in
8   accordance with 18 U.S.C. Section 3665 and 28 U.S.C. Section
9   2461.
10          Subsequent indictments were filed, the First
11  Superseding Indictment at Docket No. 180 and a second
12  Superseding Indictment.  Mr. Schrah entered a plea of not
13  guilty to all of the charges brought against him.  And then
14  subsequent to the Indictments, in accordance with the plea
15  agreement, he changed his plea to a plea of guilty to Count 8
16  of the Second Superseding Indictment.  Pursuant to the terms of
17  the plea agreement, the Government orally moved to dismiss all
18  of the other counts against him in the initial Indictment and
19  the First Superseding Indictment.  That motion was granted, but
20  the effect of the order was stayed until the time of
21  sentencing.  Today is that day.
22          In preparation for this hearing, I've had the
23  opportunity to review and consider Docket No. 712, which was
24  the initial presentence report; Docket No. 754, which was the
25  final presentence report; and Docket No. 755, which was an

1  addendum to that report.
2    Let me inquire of you, counsel, whether you've had
3  adequate opportunity, as has the defendant, to review and
4  consider these documents.
5    *MR. TILL:*  The Government has, Your Honor.
6    *MR. EDSTROM:*  And defense counsel and the defendant
7  have as well.
8    *THE COURT:*  Thank you.  Are there any other documents
9  I should be considering for purposes of sentencing?
10   *MR. TILL:*  Not from the Government's point of view,
11 Your Honor.
12   *MR. EDSTROM:*  Nor from the defendant.
13   *THE COURT:*  Thank you.  Then with regard to the
14 presentence report, found at Docket No. 754 and 755, is there
15 any dispute as to the factual contents?
16   *MR. TILL:*  No, Your Honor.
17   *MR. EDSTROM:*  There is no dispute on the factual
18 content on behalf of defendant.
19   *THE COURT:*  Any dispute as to the calculation of the
20 sentence under the federal sentencing guidelines?
21   *MR. TILL:*  No, Your Honor.
22   *MR. EDSTROM:*  There is no dispute as to calculations
23 on behalf of defendant.
24   *THE COURT:*  Any request for a departure?
25   *MR. TILL:*  Not from the Government, Your Honor.

1    *MR. EDSTROM:*  Nor from the defendant.

2    *THE COURT:*  Any request for a variant sentence?

3    *MR. TILL:*  Not from the Government.

4    *MR. EDSTROM:*  Nor from the defendant.

5    *THE COURT:*  Thank you.  Then we'll move to allocution.
6    I'll hear argument from the Government as to the sentence you
7    believe is appropriate.

8    *MR. TILL:*  Your Honor, I believe the recommendation
9    from probation is appropriate.  I believe the recommendation is
10   credit for time served and a year of supervised release.

11   *THE COURT:*  Anything else?

12   *MR. TILL:*  No, Your Honor.

13   *THE COURT:*  Thank you.

14   What's the defense's position?

15   *MR. EDSTROM:*  Your Honor, we would agree with Mr. Till
16   and the Probation Department and request that this Court adopt
17   the recommendations from the Probation Department.  As far as
18   the six days time served that Mr. Schrah has served on this
19   case, I know this court is aware of what Mr. Schrah's criminal
20   history was in the 64 years prior to this Indictment, which was
21   limited purely to low-level traffic violations.  The first time
22   he ever stepped foot into a jail cell is when he was arrested
23   on this particular case.

24   This case began as -- based on an association he had
25   with the motorcycle group called the Hells Lovers.  He was

1   recruited into the gang in order to give the motorcycle club a
2   better image to the community, because they felt that he might
3   do a good job of projecting a more positive image.  Once he
4   became aware, based on the Indictment, about what type of
5   activity had been going on inside the club, he immediately cut
6   his membership with that club.  He has no intention of
7   associating with anybody who would be a part of a club like
8   that.  I have absolutely no doubt that he will remain outside
9   the criminal justice system from this point forward.
10          As far as the recommendation is concerned, it also
11  lists that a fine is not recommended.  Part of the consequences
12  that Mr. Schrah will face in this case is that the contract he
13  has on behalf of his autobody shop with Denver International
14  Airport has essentially been severed because of a felony
15  conviction.  We'd like the Court to take into account that
16  because he is losing contracts for having a felony conviction,
17  it will affect his ability to earn money in the future.  We
18  think that's something -- that's why he believe the
19  recommendation of not giving him a fine would be appropriate in
20  this case.
21          *THE COURT:*  Also looks like he has numerous assets
22  that could be liquidated in order to pay a fine.  Why shouldn't
23  I order a fine to be imposed through liquidation of assets?
24          *MR. EDSTROM:*  I think based on his own criminal
25  history, just based on -- at the end of this case, what he

 1   actually pled guilty is not anything involving what had gone on
 2   in the club, but allowing a marijuana grow operation to occur,
 3   involving another co-defendant.  Mr. Schrah does believe that
 4   that entire cooperation was in full compliance with state law,
 5   didn't take into account it would be a federal violation.
 6   Given his lack of criminal history, given the fact that what he
 7   ultimately pled guilty to was not the affirmative act of
 8   engaging in the marijuana grow operation, but allowing it to
 9   happen without reporting, it would lead it to be appropriate to
10   not have a fine.
11           *THE COURT:*  Anything else you'd like me to consider?
12           *MR. EDSTROM:*  Nothing further on my behalf.  I believe
13   Mr. Schrah would like to address the Court, though.
14           *THE COURT:*  Thank you.
15           Mr. Schrah, what would you like me know?
16           *THE DEFENDANT:*  The last thing I want to do in my life
17   is have you upset with me.  I am a novice at this.
18           *THE COURT:*  Count your blessings.  Count your
19   blessings that you're a novice at this.  Some people who are
20   before me are real experienced at that.
21           *THE DEFENDANT:*  I had a feeling.  But, you know, the
22   intent, you know, was not to project the image, really, outside
23   the club, but was to try to help in the club.  It was to try to
24   change a lot of the beliefs in there, that you had to be a
25   thug, you know, to be in a club.  You don't have to be.  You

1    can have fun.  And, you know, I joined it for fun.  But all of
2    my fun was -- all of my fun was clean fun, pranks, you know.
3    Like -- you know, like -- went to visit a friend's mother in a
4    the hospital, she had been in a wreck, was in a wheelchair, him
5    trying to get a drink with me in the wheelchair.  Didn't
6    happen.  But that kind of thing, you know.  But --
7             Anyway, and I do think I did some good there.  I do
8    think I did a lot of good there.  There was a lot of reverse
9    prejudice, and there was a lot -- you know, we did a lot of
10   good for that, and I felt good about that, and I think I did
11   the right thing in trying to help that.
12            The drug thing, I had no idea, never knew about it.
13   I'm probably the most anti-drug guy in America.  I've had --
14   that happened in my life and it ruined him, but -- my brother,
15   you know.  I didn't need that.  So I'm not part of that, and I
16   don't -- I never encouraged it, never condoned it, never knew
17   it, and -- I --
18            You know, I said to a friend of mine, my -- as a
19   matter of fact, she's in the back of the room.  She's been
20   around the club 35 years.  And I said, how could this go on and
21   me not know it?  You know, it really made sense what she told
22   me, I never thought about it before.  It's called drug
23   etiquette.  Your Honor, if like -- if I knew that you didn't do
24   drugs, then I wouldn't let you know I do drugs.  If I knew that
25   you didn't like drugs, like me -- everybody knows I don't like

1    them -- then they don't even let me know that they do them.
2    They just don't do them around me, they don't even let me know
3    they do them.  That's called drug etiquette.
4            I guess that made sense.  I have another friend of
5    mine, her husband was sticking needles in his arm for three
6    years.  She didn't know it.  I got a lot of education out of
7    this, I guess is what I can say.  And went all my life looking
8    at the good side of people.
9            Anyway, that's about it.  I didn't really keep
10   anything -- you know, I do work for Commerce City, for
11   Lochbuie, for Keystone, for the State Patrol.  I have officers
12   there in my shop all the time, you know, business and as friend
13   basis.  And you know, I've had them for 32 years.  And I
14   wouldn't throw that away trying to do something illegal.  And
15   so, you know, I -- I had ran copies of, you know -- had a
16   friend get on the internet, and he come across a lot of stuff
17   that Mr. Obama had asked Mr. Holder not to prosecute, states
18   that had that.  And so I didn't think I was doing really
19   anything wrong, you know.
20           I had to downsize the shop, and it seemed like a good
21   way to get rid of the space.  And I ended up losing $20,000
22   because they didn't pay the bill, didn't pay the rent, didn't
23   pay the utilities, and I ended up evicting them, really what
24   happened to them.
25           Anyway, that's about it, Your Honor.  I do want you to

1   know I respect the Court, and I do respect you.  And I deeply
2   appreciate Mr. Till's dismissal of those things that I was no
3   part of or knew about.  And I appreciate Your Honor accepting
4   that.
5         And that's about it.  You know, I -- I never done
6   drugs, never drank, I -- it's in my genes, I know, from my
7   mother, and I wouldn't -- I know I was weak to it, so I never
8   done it.
9         *THE COURT:*  Thank you.
10        Anything further, counsel?
11        *MR. TILL:*  Your Honor, I just -- when listening to
12   Mr. Schrah and thinking about his case, I guess the thing that
13   impresses me the most -- the Court sees a lot of people that
14   have hardship in their life.  But I just have personally never
15   come across somebody who actually lived in a box behind his
16   grandparent's house between the ages of 10 and 18, like he did
17   after his mother and father split up, his mother disappeared,
18   dad was out of his life.  So I -- I know he's now 64, it's a
19   long time since he was 18.  I guess when I listen to him
20   process all of this stuff, I -- I guess I factor that in some
21   way.  He definitely is guilty of the crime that he's charged
22   with here, and I don't actually hear him denying that.  But he
23   understands that it comes close to that.  In some -- it could
24   be interpreted that way.  But I don't think he's trying to do
25   that.  I think he does accept responsibility.  And I think he

1   did learn his lesson, Your Honor.

2            I believe that for -- I guess for a lot of the

3   purposes served by 3553, he has -- he -- he -- the safety of

4   the public and him not doing anything like this again, those

5   purposes will be served by the sentence recommended by

6   probation, I'm sure of that, Your Honor.

7            *THE COURT:*  Well, the recommendation here is time

8   served.

9            *MR. TILL:*  Right, with a year of supervised release, I

10  believe.

11           *THE COURT:*  Uh-huh, not probation.

12           *MR. TILL:*  I'm sorry, I misspoke, Your Honor.  You're

13  correct.  Thank you.

14           *THE COURT:*  All right.  Thank you.

15           Mr. Kruck, why did you recommend that no fine be

16  imposed?

17           *PROBATION OFFICER:*  Your Honor -- thank you, Your

18  Honor.  I looked at his whole financial situation.  I spoke

19  with Mr. Schrah during the presentence interview.  I thought,

20  weighing his assets, liabilities, that he did not have enough

21  to recommend a fine.  I think he's kind of a day-to-day, trying

22  to keep his business alive, trying to keep it afloat.  And I

23  think any additional fine that the Government were to take from

24  him would hurt him in that -- in the -- his desire to keep his

25  business afloat.  That's why I didn't recommend a fine.

1         *THE COURT:*  Well, the fine range is $100 to $5,000.
2    What I understand you saying to me is that Mr. Schrah can't
3    even pay the minimum fine of $100.
4         *PROBATION OFFICER:*  It is low, obviously, Your Honor.
5    But I think any additional financial hardship to Mr. Schrah,
6    it's going to hurt his business in the long run.  He's not
7    living above his means in any way.
8         *THE COURT:*  Why is it that you recommended supervised
9    release?
10        *PROBATION OFFICER:*  Since he already served the 6 days
11   of custody, I figured it was cleaner to do a time served
12   sentence to be followed by the 1 year of supervised release.
13        *THE COURT:*  Do you think he needs supervised release?
14        *PROBATION OFFICER:*  I didn't recommend any special
15   conditions, so time served with no supervised release, the
16   probation office would be fine with that, Your Honor.
17        *THE COURT:*  All right.  Thank you.
18             Then I'll announce the sentence I intend to impose.
19   Counsel, of course, you'll have a final opportunity to make
20   legal objections before judgment is entered.  And if you
21   believe that the sentence I describe is premised upon error or
22   I raise an issue you haven't had adequate opportunity to
23   consider and present anything on, please request a continuance.
24             Imposition of a sentence in a federal criminal case is
25   governed by a number of statutes.  The umbrella statute is 18

1   U.S.C. 3553.  In imposing sentence in this case, the Court is
2   required to consider the objectives and the factors that are
3   set forth in that statute.  The statute requires that the
4   sentence be sufficient but not greater than necessary to
5   satisfy particular objectives.  So the sentence must reflect
6   the seriousness of the offense; promote respect for the law;
7   provide just punishment; adequately deter criminal conduct;
8   protect the public from further crimes by the defendant; and
9   provide the defendant with needed educational or vocational
10  training, medical care, or other correctional treatment in the
11  most effective manner.
12          In order to fashion a sentence that meets these
13  objectives, the statute directs that the Court consider the
14  nature and circumstances of the offense; the history and
15  characteristics of the defendant; the kinds of sentences that
16  are available; the sentence prescribed by the federal
17  sentencing guidelines; the need to avoid unwarranted sentence
18  disparities among defendants with similar records found guilty
19  of similar conduct; and in the appropriate case, the need for
20  restitution.
21          At the beginning of this hearing, I identified the
22  documents that I had studied in preparing for the hearing and
23  confirmed with counsel that they and the defendant had had
24  adequate opportunity to study those and there were no other
25  documents that needed to be considered.  I confirmed that there

1  was no dispute as to the factual statements in the presentence
2  report or to the calculation of the guidelines, there was no
3  motion for a departure, no motion for a variant sentence.  And
4  I have heard both the arguments of counsel and the allocution
5  by the defendant.
6        We start with the calculation of the sentence under
7  the federal sentencing guidelines.  And as I said, there is no
8  objection to that calculation here.  Count 8 is misprision of a
9  felony.  And the Base Offense Level under the guidelines is 4,
10 by application of sentencing guideline Section 2X4.1, which is
11 invoked pursuant to a violation of 18 U.S.C. Section 4.  There
12 are no specific offense characteristics or adjustments that
13 increase that offense level, but there is a decrease to the
14 offense level, and that's due to the defendant's acceptance of
15 responsibility.  Under Section 3E1.1(a), the offense level is
16 reduced by two levels.  That results in an offense level of 2.
17       The second component under the calculation in the
18 federal sentencing guidelines is -- pertains to criminal
19 history.  And the guidelines set out those kinds of convictions
20 that result in criminal history points.  Mr. Schrah has no
21 convictions that result in criminal history points, and so his
22 criminal history point tally is zero.  And as a consequence, he
23 falls into Criminal History Category I.
24       With a Criminal History Category of I and an offense
25 level of 2, the guidelines recommend custody, jail, of 0 to 6

1    months, supervised release of no more than 1 year, probation of
2    1 to 3 years, a fine of 100 to $5,000, and a special assessment
3    of $100 is mandated by statute.
4            I've considered Mr. Schrah's involvement in the
5    offense to which he's pled guilty to and his comments.  And I
6    think he probably has learned a very valuable lesson, and that
7    is, one does not lend one's good reputation to people who do
8    not deserve it.
9            *THE DEFENDANT:*  Yes, ma'am.  I -- I understood that.
10           *THE COURT:*  Or as the colloquial saying goes, there is
11   a danger of birds of a feather flock together.  And Mr. Schrah
12   has gotten caught up in things he didn't intend to be caught up
13   in.  Nevertheless, he has admitted that he was involved in an
14   organization that was engaged in illegal activity, and he now
15   recognizes that that is the case.
16           Having considered all of the sentencing objectives and
17   the sentencing factors, I think the appropriate sentence here
18   is as follows:
19           There is a special assessment of $100 that is mandated
20   by statute, and that's due and payable immediately.  I do
21   intend to impose a fine, and that's because the statute
22   requires me to impose a fine unless I find that the defendant
23   is unable to pay a fine.  And given the fine range of 100 to
24   $5,000, I can't find, Mr. Schrah, that you're unable to pay a
25   fine.  You have a number of very, very nice and enjoyable

```
 1  assets.  And even though your business may decline at this
 2  point, you can liquidate assets in order to pay a fine.  And I
 3  impose a fine of $100, which is the minimum fine to be imposed.
 4           THE DEFENDANT:  Thank you.
 5           THE COURT:  I do not intend to impose a term of
 6  supervised release because it does not appear to me that
 7  Mr. Schrah needs further supervision.  He's been compliant with
 8  his pretrial supervision, and he does not appear to me to need
 9  further supervision by the probation office.  And I do not
10  intend to impose a custodial term; instead, the sentence here
11  will be time served.
12           Any need for clarification or further explanation?
13           MR. TILL:  No, Your Honor.  Thank you.
14           MR. EDSTROM:  Not from defendant.
15           THE COURT:  Thank you.
16           THE DEFENDANT:  Thank you.
17           THE COURT:  Then having considered the provisions of
18  18 U.S.C. Section 3553, pursuant to the Sentencing Reform Act
19  of 1984, it is the judgment of the Court that the defendant,
20  Thomas A. Schrah, Jr., be committed to the custody of the
21  Bureau of Prisons to be imprisoned for the term he has already
22  served.
23           There will be no supervised release.  There will be no
24  fine.  He will pay a -- there will be a fine of $100, and there
25  will be a special assessment of $100.  Both of these are due
```

1   and payable immediately.

2            His bond is exonerated, and I advise him of his right

3   to appeal.

4            If you'd like to appeal, Mr. Schrah --

5            *THE DEFENDANT:*  No, ma'am.

6            *THE COURT:*  Well, I still have to advise you of your

7   right, even though the gallery is chuckling.  If you'd like to

8   appeal, you have to file a Notice of Appeal within 14 days.

9            *THE DEFENDANT:*  Yes, ma'am.

10           *THE COURT:*  And if you don't file a Notice of Appeal

11  within 14 days, you lose your right to appeal.  Now,

12  ordinarily, your attorney would file that Notice of Appeal for

13  you.  But if there is some reason you want to appeal and he's

14  unable or unwilling to file the Notice of Appeal for you, then

15  you may request the clerk to do so, and I will direct the clerk

16  to do so.

17           *THE DEFENDANT:*  Thank you, ma'am.

18           *THE COURT:*  You're welcome.

19           Is there any further business to bring before the

20  Court?

21           *MR. TILL:*  Your Honor, I assume that the motion will

22  be given effect to dismiss the remaining charges.

23           *THE COURT:*  That already was granted.

24           *MR. TILL:*  Thank you.

25           *MR. EDSTROM:*  I have nothing further.

```
 1              THE COURT:  Thank you.
 2              Then good luck to you, Mr. Schrah.
 3              THE DEFENDANT:  Thank you.
 4              THE COURT:  I'm sure I will not see you here again.
 5              THE DEFENDANT:  No, you will not see me.
 6              THE COURT:  Try to avoid traffic court too.
 7              THE DEFENDANT:  I do try.
 8              THE COURT:  All right.  Thank you very much.  That
 9   will conclude this matter.  We'll stand in recess and reconvene
10   in just a minute or two in the matter we recessed in earlier.
11              (Recess at 11:46 a.m.)
12                          REPORTER'S CERTIFICATE
13
14        I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.
15
16        Dated at Denver, Colorado, this 24th day of August, 2013.
17                              s/Therese Lindblom
18                              _____
                                Therese Lindblom,CSR,RMR,CRR
19
20
21
22
23
24
25
```